ALCO FILM CORP. v. ALCO FILM SERVICE OF MINNESOTA.

SAME v. PROGRESSIVE INV. CO. OF PORTLAND, OR.

(Circuit Court of Appeals, Second Circuit. June 10, 1916.)

Nos. 149, 237.

BANKRUPTCY ⊙═293(4)—SUMMARY ORDERS—JURISDICTION.
    Though appellants were adverse claimants, residing in other states, and the property, for the surrender of which the bankrupt's receiver moved, was in other states, appellants, by their failure to move to quash the service of summons, or to except thereto, waived any right to object that the court of bankruptcy was without jurisdiction to enter a summary order in the premises.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. ⊙═293(4).]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of the Alco Film Corporation. On motion by receivers for an order against the Alco Film Service of Minnesota (the Sherman Feature Service) and against the Progressive Investment Company of Portland, Or. From orders in favor of the receiver, the Alco Film Service of Minnesota (Sherman Feature Service), appeals. Affirmed.

The following is the opinion in the court below of Mayer, District Judge:

The receivers have moved for an order directing respondents to turn over certain motion picture films now in their possession and 70 per cent. of the receipts obtained by them from the rentals of said motion pictures from the time they obtained them to date. Under date of September 12, 1914, the bankrupt corporation (hereinafter called "Alco") and a partnership known as the Sherman Feature Company entered into a written agreement by which the Sherman Company obtained from Alco what the parties called the exclusive agency or franchise, which permitted the Sherman Company the exclusive right to obtain and exhibit pictures released through the Alco. This "franchise" covered Minnesota, North Dakota, South Dakota, and Wisconsin. Alco retained title and Sherman Co. is referred to as the "lessee."

Paragraph 15 provided: "It is distinctly understood and agreed that all film furnished to the lessee is the property of the company and is leased to the lessee, and not sold or donated, and that all films must be returned to the company within 12 months of their delivery to the lessee unless such time is extended by written agreement. * * *"

Paragraph 14 fixed the compensation, or rental, or whatever the money requirement may. be called, as follows: "14. A sum equal to 70 per cent. of the gross receipts from all pictures supplied hereunder shall be remitted by the lessee promptly * * * not later than 6 p. m. of Monday of each week; and failure so to remit may, at the option of the company, constitute a breach of this contract and justify the company in withholding the production for the next ensuing week, while a repetition of the offense may, at the option of the company, constitute sufficient reason for a termination of this agreement, and a conclusion and determination of the relationship herein and hereby established in the manner hereinafter set forth for the cancellation of the said contract." The remaining 30 per cent. was to be the property of the "lessee."

Certain pictures were forwarded to and received by the Sherman Company, and were exhibited by it in its allotted territory, and the Sherman Company accounted and paid rentals up to about December, 1914. On January 26, 1915, the receivers were appointed and duly qualified, and were authorized to continue business. After demand, the Sherman Company has refused to account for the 70 per cent. or to return the films. The ground of refusal is that the Alco was guilty of breach of its contract, and did not live up to its representations, all to the great damage of the Sherman Company.

The Sherman Company (who were to do business as Minnesota Film Service) among other things alleges that certain films promised to it were not delivered and as a result: "(14) That owing to the said breach of contract by the said Alco Film Corporation, and the failure to deliver any further film productions or photo plays, the said Minnesota Film Service was in turn unable to perform or carry out its contracts with exhibitors and others, and has suffered and will suffer great damage by reason of said breach; that said Minnesota Film Service had assumed obligations to provide films to said exhibitors and others under more than 20 contracts, all of which contracts and obligations they have been compelled to break, and many claims for damages are now being made and will be made against them."

It is further alleged: "(15) That the said Minnesota Film Service now has

certain film productions or motion pictures delivered by the Alco Film Corporation in its possession and under its control and outside the state of New York, but by the terms of the said contract with the said Alco Film Corporation it was to be and is entitled to retain all films received by it until the expiration of twelve months from delivery. * * ° * "(17) That neither of the copartners above referred to, nor any of the officers of the Minnesota Film Service, reside in the Southern district of New York, and the said Minnesota Film Service has its principal office and place of business in the city of Minneapolis, state of Minnesota, and has no office or place of business in the said Southern district of New York."

A summary order is resisted on the following grounds: (1) That respondents are adverse claimants. (2) That the order will be ineffective outside of the Southern district of New York, the property not being here.

The first objection proceeds upon the theory that, where facts are undisputed, and only a question of law is involved, and the question of law is debatable, the person resisting is an adverse claimant. Such is not the law. What Judge Hough said in Re Michaelis & Lindeman, 27 Am. Bankr. Rep., 299, (D. C.) 196 Fed. 718, has recently been clearly reiterated by the Circuit Court of Appeals for the Second Circuit, in Matter of R. & W. Skirt Company, 222 Fed. 256, 138 C. C. A. 67, March 9, 1915, opinion by Judge Coxe.

Assuming the facts to be as set forth by Mr. Davies in his affidavit submitted on behalf of the respondents, it becomes the duty of the court, upon an application of this kind, to determine the law of the case. First, respondents have no lien; and, secondly, under the principle of Michaelis & Lindeman, supra, respondents cannot set off the receipts since the date of the filing of the petition against their claim for damages for a breach prior thereto. Thirdly, the "twelve months" provision in section 15 merely means that the "lease," so called, is for that period.

Upon failure to account (remembering always that the title to the property remained in Alco), Alco was entitled to have its property returned. The respondents might refuse to pay over gross receipts and fight that battle to its finish, but I see no theory upon which they could successfully retain the films.

As to the second ground, I may observe that, while respondents have cited many cases, it will be found that with a possible single exception they are not applicable. In Re Waukesha Water Co., 116 Fed. (D. C.) 1009, for instance, service was made outside of the jurisdiction. In Staunton v. Wooden, 179 Fed. 61, 102 C. C. A. 355, it is not entirely clear whether service was within the Northern district of California, or in Nevada. I am inclined to think it was in Nevada; but, in any event, as respondents in the proceedings at bar were served in this jurisdiction and the order is in personam, I think there is power in this court to make the order.

If respondents should not return to the Southern district of New York and should refuse to deliver, the receivers may or may not find it necessary to take proceedings ancillary to lay hold of the property; but that bridge may be crossed if the journey takes the receivers that far. I conclude, therefore, that the receivers are entitled to a summary order directing the respondents to return the films.

As the situation is a practical one, which should be dealt with promptly and equitably, so far as possible, and as these films, from the production standpoint, have an uncertain life, I will authorize and direct the receivers to let respondents keep the films upon payment of the 70 per cent. for the period from filing petition to date and hereafter, leaving the question as to receipts prior to the bankruptcy and the claims for damages to be settled later on.

In respect of the various petitions to intervene, the motions will be granted; but those rights and relations cannot be determined until the receivers get the films or the money. As the same principles apply to all the pending applications, a recital of the particular facts is not necessary, and similar orders will be made in all the applications.

While, in a sense, it is not the court's business to compromise disputes, I think it would be to the interest of all concerned if some fair and reasonable settlement could be arrived at, in order that everybody should get his just

share while the films have an earning capacity. If Mr. Watkins states the facts correctly, his experience has been especially unfortunate.

H. W. Goddard, of New York City, for appellant.

Milton M. Goldsmith, of New York City (L. Frankel and David Cohen, both of New York City, of counsel), for appellees.

Before COXE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. The appellants in this case appeared specially, but not to raise the question of jurisdiction of their persons. Their theory was that they were adverse claimants, and that because they resided in other states, and the films which the court was asked to require them to surrender were in other states, the United States District Court for the Southern District of New York had no jurisdiction to make any summary order in the premises. No motion was ever made to quash the service of process nor was any exception taken to it, either in the District Court or in this court. Conceding the service of process to have been invalid, the objection was waived.

The orders of Judge Mayer are affirmed, except that the reference to the film known as "Tillie's Punctured Romance" should be stricken out from the order in the case of the Progressive Investment Company.